An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-462

Filed 15 July 2026

Forsyth County, Nos. 19CR058192-330, 19CR058193-330

STATE OF NORTH CAROLINA

v.

ROBERT ANTHONY GRANATO

Appeal by defendant from judgment entered 29 July 2024 by Judge Robert Broadie in Forsyth County Superior Court. Heard in the Court of Appeals 22 April 2026.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Michael T. Henry, for the State.*
>
> *Stephen G. Driggers for defendant-appellant.*

ZACHARY, Judge.

Defendant Robert Anthony Granato appeals from the trial court's judgment entered upon a jury's verdicts finding him guilty of second-degree murder and carrying a concealed gun after consuming alcohol. On appeal, Defendant argues that the trial court erred by denying his motion to dismiss and motion for judgment notwithstanding the verdict and by improperly instructing the jury. After careful

review, we conclude that Defendant received a fair trial, free from error.

## I.    Background

In the late afternoon of 6 August 2019, Defendant and Landon Smith entered BJ's Brewhouse in Winston-Salem, North Carolina, sat at the bar, and ordered drinks and food.

According to trial testimony, Defendant's behavior began as "arrogant" and became "progressively worse." When Ashley Bachman, the bartender, refused to serve Defendant "three shots at one time," which is illegal, Defendant was "not happy" and twice more requested the drinks. To appease Defendant, Bachman poured a double shot and held "it behind the bar until [Defendant] was finished with the first drink." Defendant made loud comments about Bachman to Smith, complaining that she "didn't know how to pour" and "there wasn't enough alcohol in his drink." Defendant then became more aggressive toward Bachman, saying, "f*** you," repeatedly calling her a b****, and finally announcing that "[t]his c*** doesn't know how to serve."

Bachman alerted the manager, Nicole Sanfiorenzo, to the escalating situation. Sanfiorenzo twice refused Defendant and Smith's requests for more drinks. Defendant angrily responded that Sanfiorenzo was "a b****" and that "he knew the owner and . . . [the employees] were going to be sorry; [they] were going to lose [their] jobs." Defendant then "walked to the end of the bar . . . where the alcohol [was]" and "lean[ed] over the bar and grabbed [a] bottle from behind the bar." Bachman "put

[her] arm up and asked for him to go pay his bill and leave" and told him that they "weren't going to serve him anymore." Kelli Parks, another employee, suggested that Defendant just pay his bill and leave; Defendant "looked over at [Parks] and said, 'B****, you can shut the f*** up, too.'"

The confrontation between Parks, Defendant, and Smith attracted the attention of Kadeam James and Julius Sampson, two regular customers who were eating lunch at the bar. According to James, Defendant "was clearly drunk"; he was "cursing" and "dozing off at the bar." When Defendant began yelling and "getting out of control," James and Sampson "felt like [they] needed to . . . help [the employees] out."

Sampson and James approached Smith and Defendant, who were "already up out of their seats." James testified that they told Smith and Defendant that the employees "ask[ed] you nicely to leave" and "if you don't, we will happily escort you." When Smith and Defendant did not leave, James held the door open and he and Sampson escorted them out. Parks, Bachman, and Sanfiorenzo followed Defendant outside, while James and Sampson remained at the door. No one threatened, touched, or attempted to stop Defendant from leaving.

As they exited the restaurant, Defendant, who was drunk and "hyped up," told James and Sampson: "You don't want to f*** with me. I've got something for you. You don't want to f*** with me. Y'all don't know me." James felt that Defendant "was trying to provoke [them] to step out of the restaurant" and that he had a "demeanor

about him like he . . . wanted to try and do some harm."

Parks, Bachman, and Sanfiorenzo continued to tell Defendant to leave. Sampson, who was still standing at the door approximately five feet from Defendant, "lighthearted[ly]" said, "You don't want to f*** with a n**** like me." Defendant responded: "No, you don't want to f*** with a n**** like me." Then, Defendant began reaching toward his side or behind his back, and James grabbed his wrists.

As the employees pulled James away from Defendant, Sampson pushed Defendant. Defendant pushed back, and the two men fought, fell to the ground, and a gunshot rang out. Sampson began "stumbling" and "spitting up blood." At that point, James saw a gun in Defendant's hand; accordingly, he restrained Defendant until law enforcement officers arrived. Sampson died at the scene from a gunshot wound to the chest.

Defendant was charged with first-degree murder and carrying a concealed gun after consuming alcohol.

At trial, the State introduced still images captured from a restaurant employee's cell-phone video of the altercation. Detective Ryan Hunter with the Winston-Salem Police Department testified that the images showed "what appear[ed] to be a very small derringer revolver in [Defendant's] left hand" before the fight. Detective Hunter further testified that, in the images, Defendant's thumb was likely "near the back of the weapon . . . where the hammer [was] located," and his left pointer finger was "[a]t or near the trigger." Defendant made no objection to the

introduction of the still images or to Detective Hunter's testimony.

Defense counsel moved to dismiss the first-degree murder charge at the close of the State's evidence and renewed his motion at the close of all evidence; the trial court denied the motion both times.

On 29 July 2024, the jury returned its verdicts finding Defendant guilty of second-degree murder and carrying a concealed gun after consuming alcohol.[1] After the verdicts but before sentencing, defense counsel moved "that notwithstanding the evidence that the verdict . . . not be upheld by this [c]ourt given that the evidence in this matter does not substantiate a verdict of second-degree murder"; the trial court also denied this motion.

That same day, the trial court entered judgment against Defendant, consolidating his convictions and sentencing him to 192 to 243 months' imprisonment in the custody of the North Carolina Department of Adult Correction.

Defendant gave oral notice of appeal.

## II. Discussion

Defendant argues that the trial court erred by 1) denying his motion to dismiss and motion for judgment notwithstanding the verdict when "there was insufficient evidence [he] committed second-degree murder"; and 2) instructing the jury on the

---

[1] The indictment for the charge of carrying a concealed gun after consuming alcohol and the jury's verdict finding Defendant guilty of this charge are not included in the record on appeal. Based on our review of the record, we are satisfied that the trial court instructed the jury on this charge and that the jury found Defendant guilty. Defendant does not argue otherwise.

aggressor doctrine.

## A. Sufficiency of the Evidence

Defendant first challenges the trial court's denial of his motion to dismiss the charge of second-degree murder (a lesser-included offense of first-degree murder) and motion for judgment notwithstanding the verdict, on the grounds that there was insufficient evidence that he acted with the necessary malice.[2]

### 1. Standard of Review

"This Court reviews the trial court's denial of a motion to dismiss de novo." *State v. Nazzal*, 270 N.C. App. 345, 350, 840 S.E.2d 881, 886 (extraneity removed), *disc. review denied*, 375 N.C. 491, 847 S.E.2d 418 (2020).

"Upon [a] defendant's motion for dismissal, the question for the [c]ourt is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense." *Id.* at 350, 840 S.E.2d at 885 (citation omitted). "If so, the motion is properly denied." *Id.* (citation omitted).

"Substantial evidence is the amount necessary to persuade a rational juror to accept a conclusion." *State v. Osborne*, 372 N.C. 619, 626, 831 S.E.2d 328, 333 (2019)

---

[2] Defense counsel moved for "judgment notwithstanding the verdict" as to this charge after the jury delivered its verdicts but before sentencing; the trial court denied this motion. Our Supreme Court has concluded that "a motion for judgment notwithstanding the verdict is not proper in a criminal action." *State v. Witherspoon*, 293 N.C. 321, 327, 237 S.E.2d 822, 826 (1977). Nevertheless, on appeal, Defendant raises the same argument regarding the sufficiency of the evidence as to both this motion and his properly preserved motion to dismiss, the latter of which we address. Consequently, we need not further address Defendant's "motion for judgment not withstanding the verdict."

(extraneity removed). "[T]he evidence is to be considered in the light most favorable to the State and . . . the State is entitled to every reasonable inference to be drawn therefrom." *State v. Swinson*, 299 N.C. App. 496, 500, 918 S.E.2d 232, 237 (2025) (citation omitted).

It is the jury's "role to weigh the evidence" and "if more than a scintilla of competent evidence supports the allegations against a defendant, then the trial court's denial of a defendant's motion to dismiss must be upheld." *State v. Rogers*, 255 N.C. App. 413, 415, 805 S.E.2d 172, 174 (2017) (extraneity removed).

### 2. Analysis

"The elements of second-degree murder are (1) the unlawful killing, (2) of another human being, (3) with malice, but (4) without premeditation and deliberation." *Swinson*, 299 N.C. App. at 500, 918 S.E.2d at 237 (extraneity removed). "Intent to kill is not a necessary element of second-degree murder, but there must be an intentional act sufficient to show malice." *Id.* (citation omitted).

Here, Defendant's challenge is limited to the sufficiency of the evidence to show that he acted with the requisite malice where he presented evidence that he acted in self-defense. As our Supreme Court has explained, "there are at least three kinds of malice": (1) "express hatred, ill-will or spite"; (2) acting in a manner "which is inherently dangerous to human life . . . so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief"; and (3) "that condition of mind which prompts a person to take the life of

another intentionally without just cause, excuse, or justification." *State v. Reynolds*, 307 N.C. 184, 191, 297 S.E.2d 532, 536 (1982) (citation omitted). The third type—"condition of mind" malice—"is proved as a matter of law when the [S]tate proves the intentional infliction of a wound with a deadly weapon which results in death and there is no evidence of mitigation, justification or excuse." *Id.*

Our Supreme Court has determined that "[w]hen the killing with a deadly weapon is admitted two presumptions arise: (1) that the killing was unlawful; [and] (2) that it was done with malice." *State v. Brichikov*, 383 N.C. 543, 555, 881 S.E.2d 103, 112 (2022) (extraneity removed). "[A]n unlawful killing with malice is murder in the second degree." *Id.* (citation omitted). However, if the defendant "produce[s] some evidence raising an issue on the existence of malice," then "the presumption disappears altogether, leaving only a permissible inference which the jury may accept or reject." *Id.* at 555, 881 S.E.2d at 112–13 (extraneity removed).

Defendant argues that "the evidence does not support an inference [he] acted with malice, that he intended to kill or fatally wound Sampson" in that while Defendant "held the [gun] concealed in his left hand[,] [h]e did not flash it or threaten Sampson with it, and he held it aloft when Sampson charged."

In the case at bar, the State presented substantial evidence from which the jury could reasonably infer that Defendant acted with malice. Defendant acted aggressively toward the restaurant employees and patrons during the entire incident. He made belligerent, threatening statements, telling the patrons who attempted to

assist the employees: "You don't want to f*** with me. I've got something for you. You don't want to f*** with me. Y'all don't know me." Once outside of the restaurant, Defendant remained combative, moving around and "hyped up like he was looking for some trouble" as he "fac[ed] [the group] talking trash." Still images from a video recording of the incident show Defendant with a gun in his hand and his fingers positioned to shoot moments before the fight started. These images, and Detective Hunter's accompanying testimony, were admitted as substantive evidence without objection from Defendant.

Defendant advances an alternative theory of the killing—that "because the [gun] did not have a trigger guard, it easily could have been discharged unintentionally when [Defendant] and Sampson fell together." Yet it is well established that "[t]he trial court is not required to determine that the evidence excludes every reasonable hypothesis of innocence before denying a defendant's motion to dismiss." *Nazzal*, 270 N.C. App. at 351, 840 S.E.2d at 885 (citation omitted). Accordingly, Defendant's contradictory evidence does not impact our analysis of whether the State presented substantial evidence as to malice.

Viewed in the light most favorable to the State, there is sufficient evidence to support a finding that Defendant acted intentionally and with malice when he fatally shot Sampson. *See Swinson*, 299 N.C. App. at 501, 918 S.E.2d at 238 ("[E]vidence of such intentional conduct is sufficient . . . for the jury to infer malice on the part of the defendant." (extraneity removed)). Thus, the trial court properly denied Defendant's

motion to dismiss.

## B. Jury Instructions

Defendant also contends that "[w]here Sampson instigated the physical altercation with abusive language," the trial court erred by instructing the jury on the aggressor doctrine. We disagree.

### 1. Standard of Review

"A trial court's jury instructions challenged at trial are reviewed de novo on appeal." *State v. Lee*, 258 N.C. App. 122, 126, 811 S.E.2d 233, 236 (2018) (italics omitted).

### 2. Analysis

"The jury charge is one of the most critical parts of a criminal trial." *Brichikov*, 383 N.C. at 553, 881 S.E.2d at 111 (citation omitted). "Trial courts have a duty to instruct the jury on all substantial features of the case arising from the evidence and must properly instruct the jury as to all essential elements of the offense charged." *State v. Greenfield*, 297 N.C. App. 832, 839, 912 S.E.2d 213, 220 (citation omitted), *disc. review denied*, 388 N.C. 740, 923 S.E.2d 234 (2025).

"[A] person is justified in the use of deadly force and does not have a duty to retreat if he or she is in a lawful place and reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another." *State v. Hicks*, 385 N.C. 52, 59, 891 S.E.2d 235, 240 (2023) (extraneity removed); *see* N.C. Gen. Stat. § 14-51.3 (2025). However, this defense is "not available

to someone who intentionally provokes the use of force against himself or herself. This is what is commonly known as the aggressor doctrine." *Hicks*, 385 N.C. at 60, 891 S.E.2d at 241 (extraneity removed); *see* N.C. Gen. Stat. § 14-51.4.

"The aggressor doctrine provides that a defendant may not receive the benefit of self-defense if he was the aggressor. An individual is the aggressor if he or she aggressively and willingly enters into a fight without legal excuse or provocation." *Lee*, 258 N.C. App. at 126, 811 S.E.2d at 236 (extraneity removed). Yet North Carolina law also recognizes that a person need not "*instigate* a fight to be considered an aggressor. Rather, even if his opponent starts a fight, a defendant who provokes, engages in, or continues an argument which leads to serious injury or death may be found to be the aggressor." *Id.* at 126–27, 811 S.E.2d at 237 (emphasis added).

When "consider[ing] whether a jury could reasonably infer from the evidence that the defendant acted as an aggressor," the trial court "must view the record in the light most favorable to the State, drawing all reasonable inferences in its favor." *Hicks*, 385 N.C. at 61, 891 S.E.2d at 242. In other words, where "there is conflicting evidence on whether the defendant acted as an aggressor and the jury could reasonably draw the inference either way, the State gets the benefit of the doubt." *Id.* "Where the evidence does not indicate that the defendant was the aggressor, the trial court should not instruct on that element of self-defense." *Lee*, 258 N.C. App. at 126, 811 S.E.2d at 237 (extraneity removed).

In the present case, Defendant acted in an aggressively hostile manner: he

drunkenly yelled, used abusive and profane language, attempted to take alcohol from behind the bar, and referred to employees of the restaurant with curse words. As Defendant's behavior grew increasingly out of control, other restaurant patrons tried to assist the employees. However, Defendant continued to angrily engage with the others in a threatening manner as he and his friend exited the restaurant, telling the patrons: "You don't want to f*** with me. I've got something for you. You don't want to f*** with me. Y'all don't know me." Eventually, one of the patrons responded: "You don't want to f*** with a n**** like me." With a small derringer secreted in his left hand, Defendant stated: "No, you don't want to f*** with a n**** like me." The patron then pushed Defendant. Defendant pushed him back, the two "scuffled" and "hit the ground," and there was a gunshot. The patron died at the scene from the gunshot wound.

During the charge conference, defense counsel objected to the delivery of an abusive language instruction to the jury based on the aggressor doctrine. The trial court overruled defense counsel's objection and gave the following instruction to the jury:

> [D]efendant would not be guilty of any murder or manslaughter if . . . [D]efendant acted in self-defense and if . . . [D]efendant was not the aggressor in provoking the fight and did not use excessive force under the circumstances.
>
> One enters the fight voluntarily if one uses - - if one uses towards one's opponent abusive language which, considering all of the circumstances, is calculated and

intended to provoke a fight. If . . . [D]efendant voluntarily and without provocation entered the fight, . . . [D]efendant would be considered the aggressor unless . . . [D]efendant thereafter attempted to abandon the fight and gave notice to the deceased that the fight - - that . . . [D]efendant was doing so. In other words, a person who uses defensive force is justified if the person withdraws in good faith from physical contact with the person who was provoked and indicates clearly that he desires to withdraw and terminate the use of force, but the person who was provoked continues or resumes the use of force. A person is also justified in using defensive force when the force used by the person who was provoked is so serious that the person using defensive force reasonably believed that he was in imminent danger of death or serious bodily harm, the person using defensive force had no reasonable means to retreat, and the use of force likely to cause death or serious bodily harm was the only way to escape the danger. . . . [D]efendant is not entitled to the benefit of self-defense if . . . [D]efendant was the aggressor with the intent to kill or inflict serious bodily harm upon the deceased.

On appeal, Defendant argues that "[w]here, given the circumstances, [he] did not become the aggressor by using the phrase"—n****—"first used by Sampson, it was error for the trial court to include the abusive language in the instruction[s]." This argument is without merit. "North Carolina law does not require that a defendant instigate a fight to be considered an aggressor. Rather, even if his opponent starts a fight, a defendant who provokes, engages in, or continues an argument which leads to serious injury or death may be found to be the aggressor." *Id.* at 126–27, 811 S.E.2d at 237.

Viewed in the light most favorable to the State, there was sufficient evidence to support a finding that Defendant provoked, engaged in, or continued the

altercation which led to Sampson's death. *See id.* Therefore, the trial court did not err in delivering the aggressor instruction. *See Hicks*, 385 N.C. at 60–61, 891 S.E.2d at 241 ("When deciding whether to include the aggressor doctrine in jury instructions, the relevant issue is simply whether the record contains evidence from which the jury could infer that the defendant was acting as an aggressor at the time that he or she allegedly acted in self-defense." (extraneity removed)).

## III. Conclusion

For the foregoing reasons, we conclude that Defendant received a fair trial, free from error.

NO ERROR.

Judges GRIFFIN and FREEMAN concur.

Report per Rule 30(e).